IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRANSPORTATION INSURANCE COMPANY,** : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 06-05430** |
| **PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY,** : | |
| **Defendant.** : | |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                                       **November ___, 2008**

**INTRODUCTION**

      The instant action is a dispute between two insurance companies who seek to clarify their respective liabilities with regard to a mutually insured third party, in which Plaintiff seeks: 1) a declaration of Defendant's duty to defend under an insurance policy issued by Defendant to G&B Specialities, Inc. ("G&B"); 2) a declaration that Plaintiff is entitled to indemnification, reimbursement, equitable contribution and/or quantum meruit from Defendant for Plaintiff's defense costs, expenses, and indemnification of G&B during the course of the underlying Litigation; 3) an affixing of the share of defense and indemnity to be paid by each insurance company; and 4) an award of attorney's fees and expenses in bringing this action.

      Presently before the Court are the following motions: 1) Defendant's Motion for Summary Judgment and Brief in Support (Doc.'s 31 and 32); 2) Plaintiff's Response in Opposition to and Cross-Motion for summary judgment and Brief in Support (Doc.'s 33 and 34); 3) Defendant's Response to Cross-Motion for summary judgment and Brief in Support (Doc.'s

-1-

35 and 36); and 4) Plaintiff's Response in Opposition to (Doc. 37). At the heart of each of these motions lies the question of whether the insurance policy at issue provided coverage under its "advertising injury" provision for the various claims alleged in the underlying Pohl Litigation. Relatedly, a second issue is whether coverage is excluded under a variety of defenses and exclusions raised by Defendant.

For the reasons set forth below the Court concludes that Defendant has not met its burden of demonstrating that under the terms of its insurance policy it is excused from defending against the underlying complaint in this action. Accordingly, Plaintiff's cross-motion for summary judgment will be granted, Defendant's motion for summary judgment will be denied, and Defendant will be ordered to reimburse Plaintiff for 50% of the expenses it incurred in defending and indemnifying G&B in the underlying Litigation.

**I. BACKGROUND**

**A. Procedural History and the Underlying Litigation**

Plaintiff, Transportation Insurance Company, brings this declaratory judgment action against Defendant, Pennsylvania Manufacturers' Association Insurance Company ("PMA") in connection with a prior lawsuit over which this Court presided (Pohl Corp. v. G&B Specialities, Inc., et al., Case. No. 99-5694). In short, on July 18, 2000, Pohl sued Plaintiff's and Defendant's mutually insured, G&B, in an action for unfair competition, tortious interference, commercial and product disparagement, and various Lanham Act claims ("Pohl Complaint"). The Pohl Complaint alleged that, beginning in August of 1999 and continuing up until the date the Complaint was filed on July 18, 2000, at various times G&B and Norfolk Southern Corporation

("Norfolk") contacted Pohl's existing and potential customers and alleged that Pohl's products were based on designs that were stolen and infringing, while threatening legal action against any customer that purchased products from Pohl. On July 21, 2001, this Court consolidated the Pohl Complaint with a declaratory judgment action by Pohl against Norfolk in which Pohl sought a declaration that certain patents held by Norfolk were invalid (Pohl Corp. v. Norfolk Southern Corp., Case No. 99-5694).

Upon being served with the Pohl Complaint, in October of 2000, G&B tendered it to its insurance carriers, Plaintiff and Defendant. Plaintiff assumed the responsibility of defending G&B throughout the litigation, over the course of which Plaintiff indicates that it expended $230,000 in attorneys' fees. Ultimately, a settlement was reached on July 18, 2006, between Pohl and G&B in the amount of $250,000 and Plaintiff indemnified G&B in the amount of $175,000. In stark contrast to Plaintiff, when G&B forwarded the Pohl Complaint to Defendant, Defendant disclaimed coverage and neither defended nor indemnified its insured G&B, despite the existence of commercial and product disparagement allegations in the Pohl Complaint. In October of 2003, G&B submitted a Second Amended Complaint to Defendant and again requested coverage under Defendant's Policy. Defendant, however, declined coverage for a second time indicating by letter to G&B that there were no allegations of commercial or product disparagement in the Second Amended Complaint. Defendant further stated that even if such allegations were present, certain policy exclusions applied.

In September of 2005, relying on this Court's Order confirming that the commercial and product disparagement claims remaining in the Seconded Amended Pohl Complaint were still viable, Plaintiff sent a letter to Defendant asking for reconsideration of its coverage position and

to share in the settlement and defense costs incurred during the Pohl Litigation. By letter, dated May 25, 2006, Defendant declined to revisit its coverage position and refused to acknowledge any obligation to either defend or indemnify G&B. Plaintiff, therefore, filed the instant action on December 11, 2006 seeking the aforementioned relief.

### B. The Insurance Policies

Plaintiff issued a commercial general liability insurance policy to G&B for the period of April 24, 1999 to April 24, 2000, with per occurrence limits of $1,000,000 ("Plaintiff's Policy"). Plaintiff's Policy provided coverage for damages arising out of "personal and advertising injury."[1] Defendant issued a commercial general liability insurance policy to G&B for the subsequent policy period, April 24, 2000 to April 24, 2001, with per occurrence limits of $1,000,000 ("Defendant's Policy"). Defendant's Policy is virtually identical to Plaintiff's Policy in its coverage, definition of "personal and advertising injury," and in the applicable policy exclusions.

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332(a)(1), (2), 2201(a) and 2202 because this is a declaratory judgment action, the parties are diverse and the amount in controversy exceeds $75,000. See Reliance Ins. Co. v. VE Corp., No.

---

[1] The Transportation Policy defines "personal and advertising injury" stating that:
14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
. . .
    d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e.    Oral or written publication of material that violates a person's right of privacy;
    f.    The use of another's advertising ideas in your "advertisement"; or
    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

95-538, 2000 U.S. Dist. LEXIS 1819 (E.D. Pa. Feb. 10, 2000). Venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV. DISCUSSION

In assessing each of the pending motions, the Court must address four central issues: 1) whether Plaintiff has standing to pursue the instant action; 2) whether the Pohl Complaint contains any allegations that would trigger coverage under Defendant's coverage grant; 3) if coverage was triggered under the Pohl Complaint, does Defendant's "first publication" policy exclusion apply; and 4) if coverage was triggered under the Pohl Complaint does Defendant's 'knowledge of falsity' and 'intent to injure' policy exclusions apply. The Court will address each of these issues in turn.

### A. Plaintiff has Standing to Pursue this Action

In its motions for summary judgment Defendant asserts that Plaintiff has no right to pursue this action against it to recover under the policy Defendant issued to G&B because Plaintiff was neither a party to the insurance contract between Defendant and G&B, nor an intended third party beneficiary. (Def's Br. at 2). Defendant's assertion, however, is misguided as Pennsylvania law, which the parties agree governs the substantive aspects of this action in

establishing the scope of Defendant's liability, plainly holds that "there is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under 'other insurance' clauses or under the equitable doctrine of contribution." J.H. France Refractories v. Allstate Ins. Co., 626 A.2d 502, 509 (Pa. 1993); see also Koppers Co. Inc. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1454 (3d Cir. 1996) ("Under J.H. France, the insured gets indemnified first (pursuant to the insuring agreements) and *then* the insurers may seek to redistribute the burden among themselves.") (emphasis in original).[2]  Moreover, in discussing the right to contribution, the Third Circuit has declared that this right "is predicated upon the principle that all insurers are equally liable for the discharge of a common obligation, and arises even though, for the obligation involved, the sureties are bound by separate instruments." Commercial Union Ins. v. Bituminous Cas. Corp., 851 F.2d 98, 101 (3d Cir. 1988).  Thus, for purposes of contribution and indemnification, the fact that Plaintiff was not a party to the insurance contract between Defendant and G&B is irrelevant.

Furthermore, while an insurer is only entitled to contribution from another insurer if the policies in question insure the same property, interest and risk, see Reliance Ins. Co. v. Allstate Indemnity Co. 514 F. Supp. 486, 487 (E.D. Pa. 1981), aff'd, 681 F.2d 808 (3d Cir. 1982), it is clear that these elements are satisfied here.  Both policies covered the same insured, G&B and covered the very same insurable interest and risk–namely G&B's day to day manufacture and

---

[2] Defendant urges that the Third Circuit's continued reliance on the holdings in *J.H. France* and *Koppers* is distinguishable from the instant case because the aforementioned cases involved mass tort asbestos litigation. However, it is readily apparent that the well settled common law legal principles of equitable contribution and indemnification do not solely apply to certain aspects of asbestos related litigation.  See, e.g., Manor Care, Inc. v. The Continental Ins. Co., No. 01-2524, 2003 U.S. Dist. LEXIS 20202 (E.D. Pa. Oct. 24, 2003) (relying on the holdings of J.H. France and Kopppers to adjudicate a breach of insurance contract claim arising from an underlying complaint that alleged negligent hiring, training and supervision leading to injuries).

sale of various products. Thus, Plaintiff has standing to pursue a right of indemnification as asserted in the instant action.

### B. Defendant had a Duty to Defend G&B under its Policy

Defendant also asserts that it had no duty to either defend G&B or indemnify Plaintiff because the allegations in the Pohl Complaint do not constitute "advertising injury" as defined in Defendant's Policy coverage grant. (Def.'s Br. at 2).

#### *1. Duty to Defend*

The determination of coverage under an insurance policy is a question of law to be decided by the court. PECO Energy Co. v. Boden, 64 F.3d 852, 855 (3d Cir. 1995); Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100 (Pa. 1999). Under Pennsylvania law, an insurer's duty to defend is measured by the allegations in the underlying complaint. See, e.g., Gene's Restaurant, Inc. v. Nationwide Ins. Co., 519 Pa. 306 (Pa. 1988). In assessing whether the underlying complaint states a cause of action for a covered claim, a court sitting in Pennsylvania is confined to the four corners of the complaint. I.C.D. Indus., Inc. v. Federal Ins. Co., 879 F. Supp. 480 (E.D. Pa. 1995). Thus, this Court must compare the allegations of the underlying complaint with Defendant's Policy in order to determine if coverage exists. In so doing, this Court must read Defendant's Policy as a whole and construe it according to the plain meaning of its terms. See, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300 (Pa. 1983). Where the Court finds an ambiguity to exist, the Court should construe the policy provisions against the insurer as the drafter of the contract. See Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1093 (E.D.Pa. 1994). An insurance contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than

one sense." Hutchinson v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986); Madison Const. Co., 735 A.2d at 106 (concluding that a policy term is ambiguous as a matter of law if it is reasonably susceptible to more than one interpretation).

In addition, an insurer is obligated to defend its insured in a suit brought by a third party if the factual allegations of the underlying complaint against the insured state a claim which *potentially* would fall within the coverage of the policy. Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. 1992) (emphasis added); see also USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 611 (W.D. Pa. 2000) ("The cases are legion which hold that the obligation to defend 'is triggered if the underlying complaint avers any facts that potentially could support a recovery under the policy.'"). In analyzing and construing the underlying complaint, the factual allegations are taken to be true and the complaint is to be liberally construed by the Court with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. Id. (citing Cadwallader v. New Amsterdam Casualty Co., 152 A.2d 484 (Pa. 1959)). Furthermore, "as long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." United Services Auto. Ass'n v. Elitzky, 517 A.2d 982, 985 (Pa. Super. 1986); Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) ("if a single claim in a multi-claim law suit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on [any] covered claim."). Stated differently, if coverage depends upon the existence of facts yet to be determined, the insurer is obligated to provide a defense for its insured "until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." C.

Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co., 467 F. Supp. 17, 19 (E.D. Pa. 1979). This remains true even if the suit is "groundless, false, or fraudulent" and has "no basis in fact." Britamco, 636 A.2d at 651.

### *2. The Pohl Complaint Contained Allegations Triggering Defendant's Duty to Defend*

Applying these bedrock principles to the case at bar, the Court will examine Defendant's Policy and the allegations of the Pohl Complaint. As the facts are not in dispute in this case, the Court's sole task here is to decide whether Defendant had a duty to defend under its policy as a matter of law.

In summary, the Pohl Complaint unequivocally alleged that G&B engaged in various conduct that constituted commercial disparagement, product disparagement, and violated various provisions of the Lanham Act. (Pohl Complaint ¶¶ 9-10). Specifically, the Pohl Complaint alleged that G&B contacted Pohl's existing and potential customers and alleged that Pohl's railroad switch stand designs were based on designs that were stolen and infringing, and threatened legal action against any customer that purchased said products from Pohl. Id.

These allegations, if proven, clearly fall within Defendant's Policy definition of "personal and advertising injury."[3] Indeed, the Pohl Complaint specifically averred that G&B made false and misleading statements in order to slander and disparage Pohl's products, and tarnish its reputation amongst its existing and potential customers. Such statements, if proven, are classic

---

[3] The PMA Policy defines "personal and advertising injury" stating that:
"Personal and advertising injury" means "injury, including consequential bodily injury, arising out of one or more of the following offenses:
   . . .
   d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

examples of commercial and product disparagement, which have the effect of slandering one's business.  Thus, the conduct averred in the Pohl Complaint properly alleged advertising injury, thereby triggering a duty to defend under Defendant's Policy coverage.

### C. Defendant's Claimed Exclusions

Having concluded that the Pohl Complaint adequately alleged advertising injury within the ambit of Defendant's Policy coverage, the next task before the Court is to assess whether the policy exclusions asserted by Defendant in denying coverage to G&B are applicable here.  In making this assessment the Court must strictly construe all policy exclusions against the insurer.  West American Ins. Co. v. Lindepuu, 128 F. Supp. 2d 220, 227 (E.D. Pa. 2000).  Where an insurer seeks to deny coverage based upon an exclusion in its policy, the burden is on the insurer to demonstrate that the exclusion applies.  Id.  The insurer can sustain this burden only by establishing the applicability of the exclusion with uncontradicted facts in the record.  Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966).  If this burden is not met, then the insurer has a continuing duty to defend its insured, see, e.g., American States Ins. v. Maryland Cas. Co., 628 A.2d 880, 887 (Pa Super. 1993), and the policy "must be construed 'in a manner which is more favorable to coverage.'"  Imperial Cas. & Indemnity Co. v. High Concrete Structures, Inc., 858 F.2d 128, 131 n. 4 (3d Cir. 1988) (citing Houghton v. American Guar. Life Ins. Co., 692 F.2d 289, 291 (3d Cir. 1982)).

### *1. Defendant's 'First Publication' Exclusion is Inapplicable Here*

Defendant's Policy excludes coverage for advertising injury that arises out of "oral or written publication of material whose first publication took place before the beginning of the policy period."  Pursuant to this policy exclusion, Defendant asserts that it was not obligated to

defend G&B because its policy period covered G&B from April 24, 2000 to April 24, 2001, while the allegations in the Pohl Complaint states "[b]eginning in August 1999 and continuing to the present...." Defendant's assertion suggests that the plain meaning of its first publication exclusion is to exclude any advertising injury caused by G&B's alleged conduct that began prior to the coverage period, even if G&B's prior conduct did not cause any injury to Pohl.

The Court finds, however, that Defendant's first publication exclusion is capable of two reasonable interpretations. Thus, by definition, Defendant's first publication exclusion is ambiguous and must be interpreted against Defendant. See Maddox v. St. Paul Fire & Marine Ins. Co., 179 F. Supp. 2d 527, 530 (W.D. Pa. 2001) (holding the first publication exclusion at issue ambiguous because it was reasonably susceptible to multiple interpretations). Indeed, an alternate reasonable interpretation of Defendant's first publication exclusion suggests that prior allegations of disparaging and slanderous conduct by G&B must cause the very same injury as the later conduct. See id. (indicating that the various courts to have interpreted the prior publication exception have assumed the prior publication must cause the same sort of injuries as the latter publication). This alternate interpretation of the exclusion is implicated by the context of the policy language and the way that other courts have interpreted such language.

For instance, read in context, the phrase "whose first publication" could reasonably be understood to refer not only to the "material" but also to the injurious nature of that material. See id. In addition, the exclusion could logically be interpreted to mean that an advertising injury is only excluded where there was a *wrongful* publication prior to the policy period, as the whole point of the exclusion would be to prevent a business that has caused injury from buying insurance in order to continue its injurious behavior. See Applied Bolting Tech. Prods., Inc. v.

U.S. Fidelity & Guarantee Co., 942 F. Supp 1029, 1037 (E.D. Pa. 1996) (suggesting that the first publication exclusion was intended to prevent this very situation).

Hence, the first publication exclusion would apply here only if the publications alleged in the Pohl Complaint occurring prior to April 24, 2000, caused injuries that were identical to those allegedly suffered by Pohl from the latter publications that the Pohl Complaint alleges occurred during the course of Defendant's Policy coverage. However, because this case was ultimately settled without fully vetting the nature, extent or exact dates of the injuries suffered by Pohl, Defendant has not, and indeed cannot, establish that the injuries allegedly suffered by Pohl prior to April 24, 2000 are identical to those suffered after April 24, 2000. In addition, the Pohl Complaint clearly alleges continuing violations. Therefore, in light of the continuing nature of the offenses alleged in the Pohl Complaint, it is clear to the Court that such alleged continuing publications could not have been the same as those occurring prior to April 24, 2000. In the Court's view, the publications that occurred beginning in August of 1999 and the ones that occurred after the start of Defendant's policy period are different offenses for the purposes of the first publication exclusion because they are different in time and, presumably, also different with respect to the clients and/or perspective clients contacted.

Furthermore, Defendant's application of the first publication exclusion cannot be based on the Pohl Complaint because it contained only *allegations* of infringement beginning prior to Defendant's Policy period. Mere allegations, however, do not suffice to show that G&B was responsible for any conduct that actually violated the Lanham Act, or commercially disparaged Pohl or its products prior to the policy period. Therefore, the claims made in the Pohl Complaint remained potentially viable within Defendant's scope of coverage.

Thus, the Court finds that the first publication exclusion did not extinguish Defendant's duty to defend G&B. The Court's conclusion is particularly appropriate because the allegations in the Pohl Complaint did not specify: precisely when G&B's alleged false and misleading statements began; exactly when Pohl was supposedly injured by G&B's alleged conduct; the nature of the injuries suffered prior to the start of Defendant's Policy; or the nature of the injuries suffered after the start of Defendant's Policy.

### 2. Defendant's 'Knowledge of Falsity' and 'Intent to Injure' Exclusions are Similarly Inapplicable Here

Defendant asserts two additional exclusions that it argues alleviated its duty to defend G&B. The first exclusion Defendant relies upon precludes coverage for an injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and cause 'personal and advertising injury.'" The second related exclusion Defendant relies upon bars coverage for any injury "arising out of oral or written publication of material, if done at the direction of the insured, with knowledge of its falsity."

Defendant's arguments regarding these two exclusions rely largely on the "with knowledge" language found in each. Notably however, Defendant asserts, without recourse to pointing to a single fact in the record, that the Pohl Complaint alleges that G&B *intended* to harm Pohl, as opposed to alleging that G&B may have been merely negligent, careless, or reckless in its alleged conduct. If intentional conduct had been proven in the underlying Litigation, then coverage under Defendant's knowledge exclusions would certainly be barred. But if the evidence developed during the course of the underlying Litigation tended to show that some or all of the conduct on the part of G&B was reckless, unintentional, or merely negligent,

Defendant's knowledge exclusions would not apply.  The salient point here, however, is that at the stage of the litigation when Defendant denied G&B coverage–the very beginning, prior to conducting any factual discovery whatsoever into the Pohl Complaint–neither of the knowledge exclusions was applicable because such facts tending to support either conclusion had not yet been developed.  Thus, as will be discussed below, while Defendant may or may not have ultimately had a duty to indemnify Plaintiff pending resolution of these facts, it clearly had a duty to defend its insured G&B until Pohl was no longer able to recover on any covered claim.  See Amquip Corp., et al.v. Admiral Ins. Co., No. 03-cv-4411, U.S. Dist. LEXIS 5462, at *23 (E.D. Pa. Mar. 31, 2003).

**D. The Duty to Indemnify**

While an insurer must defend its insured if the complaint alleges conduct that potentially falls within the scope of the policy, it must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy."  Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa.1993).  Since an insurer's duty to defend requires the insurer to provide a defense and pay defense costs of a claim that might ultimately fall outside the coverage of the policy, an insurer may have an obligation to defend but no obligation to indemnify.  Frog, Switch & Manufacturing Co., Inc., 193 F.3d at 746.  Thus, a duty to indemnify does not arise until the insured is found liable for a covered claim.  Id.

It is clear that Defendant was not a party to the settlement agreement entered into between Pohl and G&B on July 18,2006, and while the issue of liability was not fully litigated to its conclusion, owing to the afore-mentioned settlement agreement and release, the Court finds that Defendant is equitably estopped from now asserting that it has no duty to indemnify Plaintiff.

Specifically, Defendant had ample opportunity prior to the filing of the instant action by Plaintiff to seek a declaratory judgment from this Court that it had neither a duty to defend G&B or indemnify Plaintiff if a settlement was reached.

Indeed, G&B forwarded the original Pohl Complaint to Defendant in October of 2000, claiming coverage under its insurance policy with Defendant and apprising Defendant that it could potentially be liable in this action. Subsequently, in October of 2003, G&B submitted to Defendant the Second Amended Pohl Complaint and again requested coverage under Defendant's Policy. Then, in September of 2005, Plaintiff's counsel sent a letter to Defendant asking Defendant to reconsider its coverage position. By letter, dated May 25, 2006, Defendant declined to reconsider its coverage position and refused to acknowledge any possible duty to defend or indemnify for the allegations in the Pohl Complaint. Hence, on at least three separate occasions spanning a period of six years, Defendant was made aware of the ongoing litigation and its possible legal and economic liability. Yet, Defendant chose to adamantly maintain its stance that it had no duty to defend or indemnify, despite having ample time and opportunity to seek a declaratory judgment or other adjudication from this Court clarifying the issue.

Moreover, as discussed at length above, Defendant's Policy covered G&B during a period in which the Pohl Complaint alleged advertising injury continued within the ambit of Defendant's Policy coverage. Therefore, there was a reasonable expectation created amongst both Plaintiff and G&B that Defendant would participate in the defense and settlement negotiations in the underlying Litigation. Therefore, this Court is not persuaded by Defendant's suggestion that it should not now be held accountable to indemnify Plaintiff for the settlement reached in the underlying Litigation. The Court finds that Defendant is responsible for

indemnifying Plaintiff, despite the fact that G&B disclaimed liability for the substantive allegations in the Pohl Complaint.

### E. Damages

Plaintiff seeks reimbursement for 50% of the expenses and costs it was required to spend in defending G&B against the Pohl Complaint, as well as for 50% of the indemnity it paid to G&B in the eventual settlement of the underlying Litigation. In determining damages for breach of a duty to defend under an insurance contract, courts must apply normal contract principles, see Gideon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 (Pa. 1963), and a breaching insurer must pay the costs incurred in defending the underlying action. Kiewitt Eastern Co. v. L & R Const. Co., 44 F.3d 1194, 1205 (3d Cir. 1995).

Based on the foregoing discussion, the Court finds that Defendant had a duty to defend G&B throughout the underlying Litigation and to indemnify Plaintiff for any settlement awarded in connection with the Pohl Complaint. As such, Defendant owes Plaintiff $202,500, which represents a 50% share of the $230,000 defense costs and expenses, and 50% of the $175,000 indemnity Plaintiff paid to G&B.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant was obligated to defend G&B in the underlying action alleging advertising injury. The policy exclusions relied on by Defendant for claims whose first publication occurred prior to the policy period, for claims arising from oral or written publication of material, if done with knowledge of its falsity, and claims caused by the insured with the intent to injure, do not preclude coverage under

Defendant's Policy. Therefore, Plaintiff's request for declaratory and summary judgment is granted, and Defendant's request for summary judgment is denied. An appropriate order follows.